IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAREINERS, LLC,

      Plaintiff,

  v.                                        Civil Action 2:22-cv-3433
                                                Judge Edmund A. Sargus, Jr.
                                                Magistrate Judge Jolson

ANOMATIC CORPORATION,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel and for Protective Order (Doc. 25). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. Plaintiff is **ORDERED** to provide a complete answer to Defendant's Interrogatory No. 1, listing all standalone and combination trade secrets Defendant is alleged to have misappropriated, **within thirty days** of the date of this Opinion and Order. Defendant need not produce any confidential discovery until Plaintiff has identified the allegedly misappropriated trade secrets with reasonable particularity. Defendant's request for expenses is **DENIED**.

**I.    BACKGROUND**

Plaintiff Mareiners, LLC is a technology company with a patent and proprietary method for applying multi-color images to metal surfaces, like aluminum credit cards. (Doc. 1, ¶ 7). Defendant Anomatic Corporation is in the business of making and selling decorated metal products. (*Id.*, ¶ 8). So, in 2017, the parties joined in a mutual nondisclosure agreement ("NDA") to share information and pursue a potential business relationship. (*Id.*). This culminated in a second agreement in August 2018, in which Defendant licensed Plaintiff's patent and trade secret

information in exchange for a one-time payment and ongoing royalties.  (*Id.*; *see also* Doc. 9-1).

When no subsequent royalty payments were made, Plaintiff investigated Defendant's use of the patent, and learned that Defendant had been approved for a patent of its own.  (Doc. 1, ¶¶ 8–9).  That patent, U.S. Patent No. 11,182,655 ("the '655 Patent"), was filed on December 13, 2018, and issued to Defendant on November 23, 2021.  (*Id.*, ¶ 11; *see also* Doc. 1-2).  Plaintiff says that it recognized its own trade secrets in the '655 Patent.  (Doc. 1, ¶¶ 12–15).  As a result, Plaintiff says it lost trade secrets and its existing business relationships were damaged.  (*Id.*, ¶¶ 16–17).  It brings the present action for claims under the federal Defend Trade Secrets Act and the Ohio Uniform Trade Secrets Act, as well as claims for breach of contract, tortious interference with business relationships, correction of inventorship, unjust enrichment, and conversion.  (*Id.*, ¶¶ 18–62).

During discovery in this matter, Defendant sent Plaintiff an interrogatory, Interrogatory No. 1, asking it to identify with reasonable particularly each trade secret it allegedly disclosed.  (Doc. 25-2 at 5).  In response, Plaintiff described "a unique process" which "addresses a complex series of challenges" in the application of multi-color images to metal surfaces.  (Doc. 25-3 at 5).  It said the process "includes, but is not necessarily limited to" seventeen steps "individually and in combination[.]"  (*Id.* at 6).  Defendant then wrote to Plaintiff asking it to clarify whether these seventeen steps were each standalone trade secrets, or only trade secret in total or in some series of combinations.  (Doc. 25-4).  Plaintiff then supplemented its response to the interrogatory, in which it represented that its method required a licensee to follow "process(es) . . . which include, but are not limited to" fourteen steps, which themselves included a total of sixteen different sub-steps.  (Doc. 25-5 at 8–9).

Again, Defendant asked Plaintiff to clarify whether its trade secret was a single, fourteen-

step process, or any of the myriad combinations that could be made of the steps and sub-steps. (Doc. 25-6). During the ensuing conferral, Plaintiff represented that it had "provided . . . the inclusive list of steps that comprise the trade secret[.]" (Doc. 25-7 at 1). Defendant interpreted this to mean that the entire fourteen-step process was a single trade secret. (Doc. 25-8 at 1). But when Defendant attempted to confirm this (*id.*), Plaintiff said it was not "fair to suggest that there is only a single trade secret within the 14 steps that are delineated." (Doc. 25-9 at 1). Defendant maintained that Plaintiff had to assert its trade secrets with more particularity, while Plaintiff said it had done enough, and the parties reached an impasse. (Docs. 25-10, 25-11, 25-12).

Now, Defendant brings the instant Motion, in which it makes four requests: (1) an order compelling Plaintiff to disclose its asserted trade secrets with reasonable particularity; (2) an order closing Plaintiff's response to the trade secret interrogatory thereafter; (3) a protective order which allows Defendant to withhold production of confidential information until after Plaintiff discloses its trade secrets with reasonable particularity; and (4) an order awarding Defendant its reasonable expenses incurred in bringing the Motion. (Doc. 25 at 1). The Motion has been fully briefed and is ripe for consideration. (Docs. 27, 28).

## II.    STANDARD

Two federal rules matter here. Regarding the Motion to Compel, Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information

3

sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

Regarding the Motion for Protective Order, a court can issue a protective order under Rule 26 to protect a party from annoyance, embarrassment, oppression, or undue expense and upon a finding of good cause. Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . ."). "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *1–2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To show good cause, a movant must be "able to demonstrate that the requested discovery, if not excluded or materially modified, would cause a clearly defined and serious injury." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *2 (W.D. Ky. June 29, 2016) (citations omitted); *see also Smith*, 2006 WL 7276959, at *1–2 (citing *Nix*, 11 F. App'x at 500) ("To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.").

Finally, regarding Defendant's request for expenses, Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides:

4

>(5) Payment of Expenses; Protective Orders.
>
>(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>>(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>>(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>>(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

**III.  DISCUSSION**

As described above, Defendant makes four requests in its Motion. The Court addresses each in turn, beginning with its request that Plaintiff be compelled to identify its trade secrets with reasonable particularity.

>A. *Plaintiff must supplement its interrogatory response to describe its trade secrets with reasonable particularity.*

In trade secret cases, the party alleging misappropriation must describe its trade secrets with reasonable particularity. *Dura Global, Techs., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945-DT, 2008 WL 2064516, at *1 (E.D. Mich. May 14, 2008). This means the trade secrets must be described with enough specificity to put the adverse party on notice what it is alleged to have misappropriated. *Dura Global*, 2008 WL 2064516, at *2 (citing *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007). Defendant says that two things make Plaintiff's description of its trade secrets unspecific. First, it says Plaintiffs' varying statements about a single process (or multiple processes) which must be followed, along with its catalog of many steps and

5

sub-steps, make it unclear which types and how many trade secrets are being alleged. (Doc. 25 at 8–12). And second, it says Plaintiff's use of vague, undefined terms to describe its process provide little context for understanding how each step—and the overall method—are conducted. (*Id.* at 12–14). Plaintiff, on the other hand, says that its "disclosure of the overall method is more than sufficient to inform [Defendant] what it is alleged to have misappropriated[.]" (Doc. 27 at 11). The Court agrees that Plaintiff must more specifically define its trade secrets.

  *i.*  *Clarity in listing trade secrets*

First, the Court finds that Plaintiff's representation that its method requires a licensee to follow "process(es) . . . which include, but are not limited to" fourteen steps, which themselves included a total of sixteen different sub-steps, does not sufficiently describe its alleged trade secrets. (Doc. 25-5 at 8–9). Plaintiff now maintains that "both the overall method and individual elements of that method qualify as trade secrets." (Doc. 27 at 11). But,

> [i]f a plaintiff "effectively assert[s] that all information in or about its [product] is a trade secret," then it brings a case "both too vague and too inclusive," and does not allow a jury to "separate the trade secrets from the other information that goes into any" product in the field.

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 381 (6th Cir. 2022) (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002)). Simply put, by labeling its entire process and all its individual elements trade secret, Plaintiff has not described how its process is distinct from any other metal application process.

And there is a particular need for clarity here because of the number of interlocking steps involved in Plaintiff's process. A trade secret is information which "derive[s] value from its secrecy and cannot be 'readily ascertainable by proper means.'" *AtriCure, Inc. v. Jian Meng*, 842 Fed. App'x 974, 979 (6th Cir. 2021) (quoting Ohio Rev. Code. § 1333.61(D)). But known steps or processes can be arranged in a unique combination that is itself entitled to trade-secret

6

protection; this is known as a "combination" trade secret.  *Caudill Seed*, 53 F.4th at 380.  Each individual step in Plaintiff's process could itself be a trade secret—or might only be a trade secret in combination with other steps in the process.  And Plaintiff has neither affirmatively disclaimed that its process contains combination trade secrets nor identified which particular steps constitute combination trade secrets.  Given that the several steps and sub-steps and the process could be arranged in an unwieldly number of potential combinations, Defendant is left to guess at which trade secrets it is alleged to have misappropriated.  (*See* Doc. 25 at 10–12).  This does not fulfill the guarantee of notice under the reasonable particularity standard.

Said differently, Plaintiff has given Defendant a list of production steps, not a list of trade secrets.  *See, e.g., Dura Global*, 2008 WL 2064516, at *2 (finding that plaintiff's submission should be a "a list of trade secrets" to satisfy reasonable particularity); *see also Caudill Seed*, 53 F.4th at 381 (finding that "a plaintiff asserting a combination trade secret over highly complex technical information cannot merely offer lists of broad technical concepts . . . identif[ying] categories of information without showing which information contained within those categories constituted a trade secret.") (quotation marks and citations omitted).  This failure to describe the trade secrets with reasonable particularity amounts to a failure to answer Defendant's interrogatory, and Defendant's request to compel a response must therefore be **GRANTED**.  Plaintiff is **ORDERED** to provide a complete answer to Defendant's Interrogatory No. 1, listing all standalone and combination trade secrets Defendant is alleged to have misappropriated, **within thirty days** of the date of this Opinion and Order.

    ii.    *Language used to describe the trade secrets*

Second, Defendant takes issue with what it calls vague and undefined terms used in Plaintiff's interrogatory response.  (Doc. 25 at 12–14).  Plaintiff responds that its terms would be

7

understood by a person of ordinary skill in its industry. (Doc. 27 at 11–13). By way of example, the parties discuss steps in Plaintiff's process which require the use of a "rinse tank." Defendant says Plaintiff must describe the components of the rinse tank and how they are used. (Doc. 25 at 12–13). Plaintiff says that a rinse tank is a commonly known device in the industry, and any type of rinse tank could be used in connection with its method. (Doc. 27 at 12).

Plaintiff rightly identifies that its burden to show that its use of language is "reasonably particular" at this stage in the litigation is not particularly high. *See, e.g.*, *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, No. 09-4697-EDL, 2010 WL 8590525, at *4–5 (N.D. Cal Mar. 17, 2010) (finding that a credible dispute between plaintiff's and defendants' experts as to the sufficiency of plaintiff's trade secret identification was enough to demonstrate reasonable particularity for the purposes of discovery); *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 11479991 (E.D. Tenn. May 25, 2017) (considering an expert declaration in support of plaintiff's position that its trade secrets were described with reasonable particularity). Yet, significantly, courts rely upon expert declaration in assessing whether a party has carried that burden. This makes sense. The Court does not possess the technical expertise to make this determination on its own.

Without any expert evidence, the Court will not make a ruling presently on whether Plaintiff's use of language is sufficiently descriptive. However, the Court offers some guidance. The parties may be positioned—without the involvement of experts—to use their own industry knowledge to arrive at mutually agreed definitions of these devices and techniques. The Court therefore urges the parties to confer and attempt to arrive at a common understanding regarding Plaintiff's use of terminology. If they cannot, Plaintiff should be prepared to support its use of language with an expert declaration.

> B. *Plaintiff's interrogatory response will be considered final, unless there is an exceptional reason to reopen it.*

Defendant further asks that Plaintiff's response be closed after it issues the response compelled by this Opinion and Order. (Doc. 25 at 15–16). This is, in part, because Plaintiff has maintained that it disclosed trade secrets through oral communications under the NDA executed by the parties. (*Id.*). The lack of extrinsic evidence documenting the disclosures creates a risk that Plaintiff might—after receiving further production in this case—mold its claims regarding disclosure by oral communications. As noted by another court:

> Under the peculiar circumstances of this case, where the alleged disclosure of trade secrets was *entirely oral*, the danger of plaintiffs "molding" their claims by way of subsequent supplementation of their original recollection of those two 2009 conversations is of particular concern. Plaintiffs claim they *told* defendants their trade secrets and defendants thereafter misappropriated them. Under that scenario, it is entirely reasonable for defendants to request, by way of Interrogatory No. 1, that plaintiffs supply a "closed" recital of their recollection of what was orally imparted in the two meetings of limited duration in 2009.

*Coda Dev. S.R.O v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-1572, 2019 WL 6219745, at *4 (N.D. Ohio Nov. 21, 2019) (emphasis in original).

And regardless of the particular concern given that this case centers on oral communication, having a degree of finality provides Defendant notice and a settled expectation of the claims it must prepare a defense against. *See, e.g.*, *Yoe*, 2017 WL 11479991, at *11 (ordering that plaintiff provide a "revised, comprehensive, *final* list of its trade secrets") (emphasis added). Accordingly, Plaintiff's response to Interrogatory No. 1 pursuant to this Opinion and Order shall be considered closed. Noting Plaintiff's concerns that it may need to make some reasonable supplementation to its interrogatory response in the future, the Court—like the court in *Coda*—will "remain open to entertaining limited supplementation upon a showing of an exceptional reason for doing so." *Coda*, 2019 WL 6219745, at *4.

*C. Defendant is granted a protective order until Plaintiff has made its supplemental response.*

Next, Defendant asks that the Court enter a protective order so that it need not produce its own confidential information until Plaintiff has identified the trade secrets Defendant is alleged to have misappropriated. (Doc. 25 at 16–19). It is the normal course for a plaintiff in a trade secret case "first to identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed to compel discovery of its adversary's trade secrets." *Dura Global*, 2008 WL 2064516, at *1. On the other hand, all parties enjoy the right to obtain relevant discovery. Therefore, in trade secret cases, courts "should balance a plaintiff's general right to broad relevant discovery with the special implications raised by a trade secret misappropriation claim." *A&P Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 WL 6606961, at *8 (S.D. Ohio Dec. 27, 2017) (then proceeding to cite favorably the balancing test outlined in *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007)).

Such special implications are raised here. First, as was described above, there is a danger of Plaintiff molding its claims to suit discovery it receives from Defendant. Additionally, until Plaintiff has clearly articulated its trade secrets, Defendant has no barometer to assess which requested discovery is relevant. *See, e.g.*, *DeRubeis*, 244 F.R.D. at 680–81 (noting that both of these factors weigh in favor of delaying trade secret discovery until the trade secret plaintiff "has sufficiently described the trade secrets at issue."). Plaintiff has not raised significant countervailing concerns warranting immediate discovery. And to the extent Plaintiff says that Defendant's request is untimely, the record demonstrates that Defendant was conferring urgently and in good faith to try to resolve the issue without judicial intervention. So, the Court—considering the special implications of the present case in balance with the broad scope of discovery—finds good cause supports a protective order, and Defendant's request is **GRANTED**. Defendant need not produce any confidential discovery until Plaintiff has identified the allegedly

10

misappropriated trade secrets with reasonable particularity.

   D. *The present dispute is substantially justified and award of expenses is therefore not proper.*

Finally, Defendant asks that Plaintiff be ordered to reimburse Defendant for its reasonable expenses incurred in bringing this Motion. (Doc. 25 at 19–21). Specifically, Defendant says that Plaintiff's conduct necessitated the Motion to Compel, and that Plaintiff's position was not substantially justified. (*Id.*). Unsurprisingly, Plaintiff believes its position was substantially justified. (Doc. 27 at 19–20).

Whether sanctions should be awarded is a matter about which the Court possesses substantial discretion. *See Ruiz-Bueno v. Scott*, 2:12-cv-0809, 2014 WL 1764578, at *2 (S.D. Ohio May 1, 2014) (citation omitted). An award of sanctions is not appropriate if a party's discovery responses and objections were "substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii). Substantially justified has elsewhere been defined as raising an issue about which "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

While the Court finds that Plaintiff failed to describe its trade secrets sufficiently, it cannot find that Plaintiff's belief that it had is altogether unreasonable. Accordingly, Plaintiff's conduct was substantially justified and Defendant's request for expenses is **DENIED**. Still, the Court notes that Plaintiff's conduct was not exemplary of meaningful conferral and cooperation toward a potential resolution of the parties' dispute. The Court urges both parties to engage in good-faith conferral and dispute resolution should further disagreements arise throughout this litigation. If they do not, the Court will not hesitate to award expenses as appropriate.

**IV.   CONCLUSION**

Defendant's Motion to Compel and for Protective Order (Doc. 25) is **GRANTED in part**

11

**and DENIED in part**. Plaintiff is **ORDERED** to provide a complete answer to Defendant's Interrogatory No. 1, listing all standalone and combination trade secrets Defendant is alleged to have misappropriated, **within thirty days** of the date of this Opinion and Order. Defendant need not produce any confidential discovery until Plaintiff has identified the allegedly misappropriated trade secrets with reasonable particularity. Defendant's request for expenses is **DENIED**.

    IT IS SO ORDERED.


Date: August 8, 2023                                                 /s/ Kimberly A. Jolson
                                                                                  KIMBERLY A. JOLSON
                                                                                  UNITED STATES MAGISTRATE JUDGE