IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MAREINERS, LLC,**

      **Plaintiff,**

vs.

Case No. 2:22-cv-3433
Judge Edmund A. Sargus, Jr.
Chief Magistrate Judge Kimberly A. Jolson

**ANOMATIC CORPORATION,**

      **Defendant.**

### OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 9), Plaintiff's Memorandum in Opposition (ECF No. 12), and Defendant's Reply (ECF No. 20). For the reasons that follow, the Court **DENIES** Defendant's Motion to Dismiss.

### I.

The facts set out below are taken from pleadings. Plaintiff Mareiners, LLC is a technology company founded and led by Reiner J. Goertzen. Mr. Goertzen over the last two decades has developed "transformative technology allowing for the crisp application of multi-colored images on metal surfaces." (Compl. ¶ 7, ECF No. 1.) In January of 2004, Mr. Goertzen filed a patent application to cover a method for applying images to surfaces, an application that matured into U.S. Patent No. 7,022,202 ("'202 Patent"), which remains valid and enforceable. In addition to the patented technology, Plaintiff "developed proprietary innovative processes that further ensure the brilliant and permanent sublimation of multi-color images on metal surfaces, including aluminum cards used by commercial credit facilities, as an example." *Id*.

Defendant Anomatic Corporation is in the business of making and selling decorated metal products for various purposes. In 2017, Defendant and Plaintiff entered into a Mutual Nondisclosure Agreement for the purpose of pursuing a potential business relationship. Plaintiff alleges that following the execution of the Nondisclosure Agreement, Mr. Goertzen worked closely with Mark Ormiston and others at Anomatic, to educate them on Plaintiff's proprietary sublimation technology for the purposes of introducing it to aluminum credit cards, gift cards, and other high-end financial card products.

The following year, on August 8, 2018, Plaintiff and Defendant entered into the Patent License Agreement which called for the payment of $250,000 along with 10% of net sales of Licensed Products during the life of the '202 patent, and 7% of net sales for Licensed Products after the expiration of the '202 patent for use of what Plaintiff avers are its confidential information and trade secrets. Plaintiff has not received any royalties under this Agreement.

In the context of inquiring about the status of Defendant's use of Plaintiff's patent, Plaintiff learned for the first time on March 8, 2022, that Defendant had received a patent on technology that utilized the information Plaintiff disclosed pursuant to the Nondisclosure Agreement, and that a second provisional application was pending. Plaintiff requested a copy of the provisional application on May 3, 2022. Defendant has refused to provide a copy.

Plaintiff's search located U.S. Patent No. 11,182,655 ("'655 Patent"), which was filed on December 13, 2018, and issued to Defendant on November 23, 2021. The sole named inventor on the '655 Patent is Mr. Ormiston. Plaintiff alleges that the '655 patent used and openly published Plaintiff's trade secrets.

Plaintiff avers that Defendant's disclosure of Plaintiff's trade secrets in a patent application resulted in the permanent loss of those trade secrets, creating significant financial harm to Plaintiff. Plaintiff filed the case *sub judice*, summarizing it as follows:

> This action arises out of [Defendant] Anomatic's willful misappropriation of confidential information disclosed by Mareiners under a nondisclosure agreement, Anomatic's incorporation of that information into one or more public patent applications, and Anomatic's interference with business relationships between [Plaintiff] Mareiners and third parties by making public Mareiners' licensed technology.
>
> In short, Mareiners' claims all arise from the same core facts. Mareiners disclosed its trade secrets to Anomatic under the protections of a[] [Nondisclosure Agreement], Anomatic breached the [Nondisclosure Agreement] and misappropriated Mareiners' trade secrets by patenting Mareiners' trade secrets, and Anomatic's conduct caused injury to Mareiners and unjustly enriched Anomatic.

(Compl. ¶ 1, ECF No. 1; Pl's Mem. in Opp. at 3, ECF No. 12.)

Plaintiff brings six claims for relief: Defend Trade Secrets Act Claim, 18 U.S.C. § 1839(3); Trade Secret Misappropriation, Ohio Uniform Trade Secrets Act, Ohio Revised Code § 1333.61 *et seq.*; Breach of Contract; Tortious Interference with Business Relationships; Correction of Inventorship, 35 U.S.C. § 256; Unjust Enrichment; and Conversion.

## II.

Defendant moves for dismissal of the entire complaint for failure to state claims upon which relief can be granted. In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

### III.

Defendant's Motion to Dismiss addresses Plaintiff's claims in the following categories, which the Court herein follows: (A) Breach of the Nondisclosure Agreement, (B) Misappropriation of Trade Secrets, (C) Remaining State Law Claims, and (D) Inventorship of the '655 Patent.

**A.    Breach of the Nondisclosure Agreement**

Plaintiff alleges that Defendant breached the Nondisclosure Agreement when it publicly disclosed Plaintiff's confidential information in the application materials for the '655 Patent. Defendant moves to dismiss this claim, contending that "the only reasonable inference to draw from the complaint is that Anomatic *is the owner* of the intellectual property disclosed in the '655 patent." (Def's Mot. at 4, ECF No. 9) (emphasis added). Defendant summarizes the bases of this conclusion:

> Individually or collectively, the [Nondisclosure Agreement] and [Patent Licensing Agreement] resulted in Anomatic's ownership of all intellectual property rights pertaining to the Parties' project, including all information Mareiners disclosed relating to the '202 Patent and its alleged trade secrets.

*Id.* Defendant then specifies how its interpretation of the Nondisclosure Agreement supports its conclusion:

> With respect to the Nondisclosure Agreement, Mareiners agreed that "[a]ny and all intellectual property rights resulting from or relating to the Subject Matter referenced above or to this disclosure of Confidential Information shall belong to ANOMATIC, and [Mareiners] agrees to execute all necessary documents to evidence the same." (NDA at ¶ 6.) The "Purpose and/or Subject Matter" of the agreement is defined as "Mareiners [*sic*] Patent and Trade Secrets Patent #7022202." (*Id.* at 1.) "Confidential Information" is defined, in part, to mean "all confidential and/or proprietary information relating to the Purpose/Subject Matter disclosed or made available by DISCLOSER to RECIPIENT." (*Id.* at ¶ 1.)

4

> Accordingly, based on the definitions of Subject Matter and Confidential Information, Paragraph 6 of the Nondisclosure Agreement effectively conveyed to Anomatic any and all intellectual property rights resulting from or relating to:
>
> > 1. Mareiners' '202 Patent or associated trade secrets; and
> >
> > 2. the disclosure of Mareiners' confidential or proprietary information concerning the '202 Patent or Mareiners' associated trade secrets.
>
> Stated differently, "[a]ny and all intellectual property rights . . . relating to [Mareiners' alleged trade secrets] . . . shall belong to [Anomatic]." (*See id.* at 1 & ¶¶ 1, 6.)

*Id*. at 4–5; (*See also* Reply at 1, ECF No. 20.)

Plaintiff responds by first pointing out that the provision upon which Defendant relies is directed at the ownership of intellectual property that "results from or relates to" the "disclosure of Confidential Information," not the confidential information itself. Specifically:

> The [Nondisclosure Agreement] thus draws a clear distinction between "Confidential Information" itself and IP rights "resulting from or relating to" the disclosure of Confidential Information. The former remains the property of the disclosing party and cannot be disseminated; the latter, should it ever exist, belongs to Anomatic.

(Pl's Mem. in Opp. at 4, ECF No. 12.)

Plaintiff further argues that the Nondisclosure Agreement, which is directed at the "Confidential Information" at issue in the instant action, has several provisions Defendant ignores. Specifically, the Nondisclosure Agreement provides that each party retains ownership of its own "Confidential Information," stating that "[a]ll Confidential Information furnished under this Agreement remains the property of DISCLOSER and will be returned to it or destroyed at DISCLOSER's request." (Nondisclosure Agrmt. § 4, ECF No. 1-1.)

Plaintiff continues, citing to the Nondisclosure Agreement's restrictions on the use of the confidential information:

5

> During [the three years following receipt of Confidential Information], RECIPIENT: (i) will not disclose the Confidential Information to any third party; (ii) will not disclose the Confidential Information to its employees unless the employees have a need to know the Confidential Information for the Purpose; and (iii) will use the Confidential Information only for the Purpose and will not use it for any third party's benefit.
>
> RECIPIENT will use the same degree of care to protect the Confidential Information from unauthorized use or disclosure as it would use to protect its own information of a similar nature, but in no event with less than reasonable care.

*Id.* § 3(a).

Plaintiff's arguments are well taken. The Nondisclosure Agreement does not provide for the full transfer or conveyance of the ownership of Plaintiff's confidential information to Defendant. Instead, it provides for the nondisclosure of the confidential information except for its use in the business relationship between Plaintiff and Defendant. As the business relationship developed, the Plaintiff and Defendant entered into the Patent Licensing Agreement, which anticipated the development of new intellectual property that *resulted from or related to* the confidential information disclosed by Plaintiff. Defendant would own the new intellectual property that was developed with the *use of* Plaintiff's confidential information.

Whether the '655 Patent is new intellectual property is one of the issues in this action that is disputed. At this juncture, however, Plaintiff has alleged a plausible claim for breach of the Nondisclosure Agreement.

**B. Misappropriation of Trade Secrets**

Defendant correctly provides that misappropriation is defined the same way under both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and the Ohio Uniform Trade Secrets Act, O.R.C. §§ 1333.61–1333.69. *Magnesium Mach., LLC v. Terves, LLC*, Nos. 20-3779/3998, 2021 U.S. App. LEXIS 36065, at *9 (6th Cir. Dec. 6, 2021). One misappropriates a trade secret

6

through "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5)(B); *see also* ORC § 1333.61(B)(2).

Defendant moves to dismiss Plaintiff's trade secret claims "[b]ecause Anomatic owns the rights to Mareiners' alleged trade secrets." (Def's Mot. at 6, ECF No. 12.) Defendant explains that "[t]here can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract." (*Id*. at 7) (citing *Epazz, Inc. v. Nat'l Quality Assur. USA, Inc.*, No. 20-1552, 2021 U.S. App. LEXIS 25942, at *29–*30 (6th Cir. Aug. 26, 2021)). Here, Defendant continues, "[t]he [Nondisclosure Agreement] and the [Patent Licensing Agreement], individually or collectively, authorized Anomatic's acquisition, use, and disclosure of Mareiners' alleged trade secrets within the context of the '655 Patent" so there can be no misappropriation. Defendant concludes, therefore, that "[e]ven assuming for purposes of this Motion only that Mareiners has adequately alleged facts sufficient to find that Mareiners disclosed information to Anomatic, that information constitutes actual trade secrets, and those trade secrets appear generally in the '655 Patent, the Complaint fails, as a matter of law, to assert a plausible claim that Anomatic misappropriated Mareiners' trade secrets." (Def's Mot. at 7, ECF No. 9.)

Plaintiff responds that "Anomatic's Motion is premised on the faulty assumption that 'the [Nondisclosure Agreement] and the [Patent Licensing Agreement] resulted in Anomatic's ownership of . . . all information Mareiners disclosed relating to the '202 Patent and its alleged trade secrets." (Pl's Mem. in Opp. at 5, ECF No. 12.) As Plaintiff posited with regard its breach of contract claim, the Nondisclosure and Patent Licensing Agreements provide to Defendant ownership *only* of intellectual property that resulted from or related to Plaintiff's confidential information – not the ownership of Plaintiff's confidential information itself. This Court agrees.

7

As explained above, neither the Nondisclosure Agreement nor the Patent Licensing Agreement provide Defendant ownership of the confidential information Plaintiff claims as trade secrets. The Nondisclosure Agreement provides Defendant use of the confidential information for the purpose of developing intellectual property and subsequent ownership of intellectual property that resulted from or related to that confidential information. Thus, Plaintiff has stated a claim for misappropriation of trade secrets sufficient to survive Defendant's motion to dismiss.

**C.    State Law Claims**

Defendant moves for dismissal of the remainder of Plaintiff's state law claims designated as follows:

> 1. "disclosing Mareiners' confidential information to the U.S. Patent & Trademark Office," (Count III – Compl. at ¶ 34);
>
> 2. "Anomatic's misappropriation of Mareiners' trade secrets," (Count IV – *id.* at ¶ 40);
>
> 3. "Anomatic unlawfully and intentionally misappropriated Mareiners' trade secrets," (Count VI – *id.* at ¶ 51); and
>
> 4. "Anomatic wrongfully converted the trade secrets" "[b]y incorporating the trade secrets into its patent application and disclosing them to the public," (Count VII – *id.* at ¶ 60).

(Def's Mot. at 8 – 9, ECF No. 9.)

Defendant contends that these claims should be dismissed because, as it has explained in previously, its

> use of Mareiners' alleged trade secrets was contractually authorized and permitted by the [Nondisclosure Agreement] and the [Patent Law Agreement] because, pursuant to those agreements, Anomatic owned all rights in the intellectual property Mareiners shared with Anomatic—including Mareiners' alleged trade secrets—or which Anomatic developed based on Mareiners' disclosures. One cannot misappropriate or convert that which it owns and/or uses in a manner authorized by contract.

*Id.* at 9.

8

Plaintiff responds:

Anomatic's argument as to Mareiners' State Law Claims rests on the same faulty premise as its argument concerning Mareiners' trade secret claims, namely, that "Anomatic's use of Mareiners' alleged trade secrets was contractually authorized and permitted by the [Nondisclosure Agreement] and the [Patent Law Agreement] because, pursuant to those agreements, Anomatic owned all rights in the intellectual property Mareiners shared with Anomatic." (Motion, ECF No. 9 at PageID 60.) This argument is factually and legally incorrect for the reasons discussed above. Accordingly, Anomatic's Motion should be denied as to Mareiners' State Law Claims.

(Pl's Mem. in Opp. at 10, ECF No. 12.)

This Court agrees. For the same reasons articulated *supra*, Plaintiff's remaining state law allegations state claims upon which relief can be granted.

### D. Inventorship of the '655 Patent

Plaintiff moves for correction of inventorship of the '655 Patent under 35 U.S.C. § 256, which "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). "[A] plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing . . . are satisfied." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Specifically, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendant argues that Plaintiff lacks standing to pursue its claim for correction of inventorship because "Mareiners has no ownership interest in the '655 Patent." (Def's Mot. at 10, ECF No. 9.) Defendant posits that, the intellectual property provision of the Nondisclosure

9

Agreement assigns all intellectual property rights in the "Developed IP" to Defendant. *Id.* (citing Nondisclosure Agreement ¶ 6, ECF No. 1-1.)

> Plaintiff responds that, *inter alia*,
>
> the '655 Patent is not an intellectual property right "resulting from or relating to" [Plaintiff] Mareiners' trade secrets, but a manifestation of the trade secrets themselves. In other words, reproducing Mareiners' trade secrets in a patent application and claiming ownership of the resulting patent is not within the scope of the [Nondisclosure Agreement], and Anomatic cannot invoke the IP ownership provision to defeat Mareiners' standing.

(Pl's Mem. in Opp. at 11, ECF No. 12.)

> In reply, Defendant posits:
>
> Mareiners attempts to recast its allegations, asserting in Opposition that the '655 Patent is a mere "reproduc[tion of] Mareiners' trade secrets in a patent application." (Opp. Br. at 11.) However, to the extent Mareiners' argument has any impact on an interpretation of the IP Ownership Provisions, which Anomatic asserts it does not, the actual allegations in the Complaint do not support Mareiners' argumentative characterization.

(Def's Reply at 9, ECF No. 20.) This Court, however, disagrees.

The Complaint sufficiently alleges that much of the '655 Patent stated without change trade secrets that were developed by Plaintiff. Specifically, the Complaint contains allegations that in the '655 Patent, claims 1–12, 14 and 17–20 explicitly designate invention of a "transaction card" or "method of manufacturing a transaction card" that was specifically developed by Plaintiff and shared with Defendant pursuant to the Nondisclosure Agreement. The Complaint additionally alleges that Defendant's claims of the development of enabling specification references located in Columns 5–10 of the '655 Patent are not Defendant's development but instead belong to Plaintiff. Plaintiff concludes that these facts show that the transaction cards and manufacturing process claims in Claims 1–12, 14 and 17–20 were invented

10

by Mr. Goertzen, disclosed to Defendant, and improperly converted into patent claims by Mr. Ormiston and Defendant.

Further, Plaintiff alleges that "all of the inventive concepts of the '655 Patent were contributed solely by [Plaintiff's founder and President] Mr. Goertzen." *Id.* ¶ 47. The Complaint concludes that "[b]ecause Mr. Goertzen is the sole contributor of the inventive concepts claimed in the '655 Patent, the inventorship of the '655 Patent should be corrected to remove Mr. Ormiston as an inventor and add Mr. Goertzen as the sole inventor." *Id.* ¶ 48.

Viewing these allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Complaint states a plausible claim for correction of inventorship of the '655 Patent.

## IV.

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss. (ECF No. 9.) This case remains open.

**IT IS SO ORDERED.**

**9/15/2023**                                              s/Edmund A. Sargus, Jr.
**DATE**                                                  **EDMUND A. SARGUS, JR.**
                                                          **UNITED STATES DISTRICT JUDGE**