IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAREINERS, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No.: 2:22-cv-03433 |
| | : | |
| v. | : | Judge Edmund A. Sargus, Jr. |
| | : | |
| ANOMATIC CORPORATION, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| Defendant. | : | |

## ORDER

Before the Court is Plaintiff's Motion for Leave to File Amended Complaint (Docs. 63, 64 (redacted motion and brief in support)), Defendant's Motion for Leave to File Sur-Reply (Doc. 71), and Plaintiff's Motion to Strike Defendant's Motion for Leave to File Sur-Reply (Doc. 73). For the following reasons, Plaintiff's Motion for Leave to File Amended Complaint is **GRANTED**, and Defendant's Motion for Leave to File Sur-Reply is **DENIED**. Plaintiff's Motion to Strike is **DENIED as moot**.

### I. BACKGROUND

The Court previously summarized the events underlying this action:

Plaintiff Mareiners, LLC is a technology company founded and led by Reiner J. Goertzen. Mr. Goertzen over the last two decades has developed "transformative technology allowing for the crisp application of multicolored images on metal surfaces." (Compl. ¶ 7, ECF No. 1.) In January of 2004, Mr. Goertzen filed a patent application to cover a method for applying images to surfaces, an application that matured into U.S. Patent No. 7,022,202 ("'202 Patent"), which remains valid and enforceable. In addition to the patented technology, Plaintiff "developed proprietary innovative processes that further ensure the brilliant and permanent sublimation of multi-color images on metal surfaces, including aluminum cards used by commercial credit facilities, as an example." *Id.*

Defendant Anomatic Corporation is in the business of making and selling decorated metal products for various purposes. In 2017, Defendant and Plaintiff entered into a Mutual Nondisclosure Agreement for the purpose of pursuing a potential business relationship. Plaintiff alleges that following the execution of the Nondisclosure

>Agreement, Mr. Goertzen worked closely with Mark Ormiston and others at Anomatic, to educate them on Plaintiff's proprietary sublimation technology for the purposes of introducing it to aluminum credit cards, gift cards, and other high-end financial card products. The following year, on August 8, 2018, Plaintiff and Defendant entered into the Patent License Agreement which called for the payment of $250,000 along with 10% of net sales of Licensed Products during the life of the '202 patent, and 7% of net sales for Licensed Products after the expiration of the '202 patent for use of what Plaintiff avers are its confidential information and trade secrets. Plaintiff has not received any royalties under this Agreement. In the context of inquiring about the status of Defendant's use of Plaintiff's patent, Plaintiff learned for the first time on March 8, 2022, that Defendant had received a patent on technology that utilized the information Plaintiff disclosed pursuant to the Nondisclosure Agreement, and that a second provisional application was pending. Plaintiff requested a copy of the provisional application on May 3, 2022. Defendant has refused to provide a copy.
>
>Plaintiff's search located U.S. Patent No. 11,182,655 ("'655 Patent"), which was filed on December 13, 2018, and issued to Defendant on November 23, 2021. The sole named inventor on the '655 Patent is Mr. Ormiston. Plaintiff alleges that the '655 patent used and openly published Plaintiff's trade secrets.

(Doc. 34 at 1–3).

On August 19, 2024, the Court granted the parties' request to modify the case schedule. (Doc. 59). As it stands, discovery closes on December 6, 2024; dispositive motions are due on January 10, 2025; and a trial is set to begin on September 2, 2025. (Docs. 57, 59). Now, Plaintiff moves to amend its complaint to add two new claims. (Doc. 64 at 1). Based on evidence obtained during discovery, Plaintiff seeks to add a claim for breach of the Patent License Agreement's ("PLA") implied covenant of good faith and fair dealing and a claim for correction of inventorship of the '518 Patent. (Doc. 64 at 1, 8). Defendant consents to the latter's addition, but not the former's. (*Id.* at 1). As such, the only remaining issue before the Court is whether Plaintiff may amend the Complaint to include its breach of contract claim. After the parties briefed Plaintiff's Motion, Defendant moved for leave to file a sur-reply, and Plaintiff moved to strike that request. (Docs. 71, 73). The Motions are ripe for review. (Docs. 63, 64, 68, 70, 71, 73).

**II.	STANDARD**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that when a party seeks leave of court to file an amended pleading, "[t]he court should freely give leave when justice so requires." This rule, which allows a liberal policy in favor of granting amendments, "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

But the Court's analysis does not end there. When a plaintiff moves to amend after the deadline for amendment, the Court must also consider "the higher threshold for modifying a scheduling order found in Rule 16(b)." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). This means Plaintiff must "show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before [the Court] will consider whether the amendment is proper under Rule 15(a)." *Hill v. Banks*, 85 F. App'x 432, 433 (6th Cir. 2003).

**III.	DISCUSSION**

The Court first discusses the parties' briefing on Defendant's sur-reply, (Docs. 71, 73), before turning to Plaintiff's Motion for Leave to Amend the Complaint (Doc. 63).

    **A.	Defendant's Sur-Reply**

At the outset, the Court must decide whether to consider Defendant's sur-reply. (Doc. 71). While this District's Local Rules contemplate response and reply memoranda, "[n]o additional

memoranda beyond those . . . are permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). "[G]enerally, good cause exists" for a sur-reply "where the reply brief raises new grounds that were not included in the movant's initial motion," and "where a party seeks to clarify misstatements contained in the reply brief." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F.Supp.3d 737, 744–45 (S.D. Ohio 2022) (internal quotations and quotation marks omitted).

Defendant says its sur-reply is justified because, in its Reply, Plaintiff allegedly ignores certain cases on the implied covenant of good faith and fair dealing. (Doc. 71 at 4–5). Yet "a party's desire to point out mischaracterizations or misrepresentations of caselaw, even if helpful, does not provide grounds for the filing of sur-replies." *Golden Eagle Res. II, LLC v. Rice Drilling D, LLC*, No. 2:22-cv-2374, 2023 WL 1927799, at *3 (S.D. Ohio Feb. 10, 2023) (citing *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, 2014 WL 12651139, at *2 (S.D. Ohio Oct. 31, 2014)). Rather, it is the Court's role to determine whether parties misconstrue "propositions . . . set forth in case law." *See Bishop v. Child. Ctr. for Developmental Enrichment*, No. 2:08-cv-766, 2011 WL 5506105, at *2 (S.D. Ohio Nov. 10, 2011). Because Defendant offers no other reason why good cause exists for its sur-reply, its Motion (Doc. 71) is **DENIED**. Accordingly, Plaintiff's Motion to Strike (Doc. 73) is **DENIED as moot**. *Berg v. State Farm Mut. Automobile Ins. Co.*, No. 2:17-cv-820, 2019 WL 4751753, at *4 (S.D. Ohio Sept. 30, 2019) (denying a motion to strike a sur-reply where the court did not consider the sur-reply).

### B. Plaintiff's Motion for Leave to File Amended Complaint (Doc. 63)

Turning now to Plaintiff's Motion, Plaintiff first suggests that Rule 16(b) should not apply. (Doc. 64 at 19; Doc. 70 at 8–9). Early on in this case, the Court set a deadline of April 24, 2023, for motions to amend the pleadings. (Doc. 18). Notably, Defendant did not file its Answer until

4

September 23, 2023. (Doc. 38). After that, although the parties often moved to modify the case schedule, they never requested another deadline for amendments. (Docs. 39, 44, 53, 56, 58). Nor did the Court set one. (Docs. 40, 45, 54, 55, 57, 59). So, says Plaintiff, Rule 16(b) may not apply because none of the Court's scheduling orders contained a workable deadline for motions to amend. (Doc. 70 at 8–9 (collecting cases)). Nevertheless, the Undersigned finds Plaintiff has satisfied the requirements of both Rule 15(a) and 16(b). Because it is a higher bar, the Court addresses Rule 16 first.

        1.     Rule 16

When considering whether a party has met Rule 16(b)'s good cause standard, "the primary measure . . . is the moving party's diligence in attempting to meet the case management order's requirements." *Inge*, 281 F.3d at 625. As noted, the Court set only one deadline for motions to amend the pleadings, which expired before Defendant filed its Answer. (*See* Doc. 18 (initial case schedule); Doc. 38 (Defendant's Answer)). Even more, this is Plaintiff's first motion for leave to amend its Complaint.

Still, Defendant argues good cause does not exist for the amendment because Plaintiff could have raised a claim for breach of the PLA from the start. (Doc. 68 at 6–9). Specifically, Defendant points to a letter dated May 3, 2022—four months before this case began. In it, Plaintiff states that Defendant is in breach of the PLA. (Doc. 68 at 7–8 (citing Doc. 68-1)). So, Defendant argues, Plaintiff could have raised a breach of contract claim over two years ago. (*Id.* at 8).

Not so, Plaintiff contends. While Plaintiff admits it had knowledge that "the '655 Patent was interfering with its ability to secure new licensees," it says it did not have evidence of bad faith to support its new claim until recently. (Doc. 70 at 10; *see also* Doc. 64 at 11–18 (outlining the procedural history of this case and Plaintiff's discovery efforts); *id.* at 7 ("Using newly

5

discovered evidence, the amendment demonstrates that [Defendant] obtained these patents in bad faith—seizing the exclusivity it desired but refused to pay for.")). To start, Plaintiff notes that in August 2023, the Court held that Defendant did not need to produce certain discovery until Plaintiff clearly identified the trade secrets at issue in the case. (Doc. 64 at 13; *see* Doc. 32 at 12). Consequently, Plaintiff did not begin receiving rolling document productions for its discovery requests until October 2023. (Doc. 64 at 13; Doc. 66 at 1–2). After that, the parties conferred on these responses, sought the Court's intervention on a discovery dispute, and eventually resolved their differences. (*Id.* at 13-14). By August 2024, Plaintiff says it received "192,669 documents, totaling approximately 1,489,823 pages." (*Id.* at 14).

Ultimately, after reviewing those materials, Plaintiff found several pieces of evidence to support the proposed amendment. (*See id.* at 14–15 (summarizing documents and emails received in discovery)). And Plaintiff says most of this evidence was not produced until May 2024. (*Id.* at 14; *see also* Doc. 66 at 2–3). Just two months later, in July 2024, Plaintiff sent the proposed amended complaint to Defendant. (Doc. 70 at 2). According to Plaintiff, between then and the filing of the instant Motion, the parties conferred on the merits of the claims. (*Id.*). In total, only four months passed between Plaintiff receiving relevant documents in discovery and moving to amend. (Doc. 66 at 2–3; Docs. 63, 64). On these facts, the Court finds Plaintiff was diligent enough to meet Rule 16's good-cause standard. *See Union Ins. Co. v. Delta Casket Co., Inc.*, No. 06-2090, 2009 WL 10664832, at *3–4 (W.D. Tenn. July 9, 2009) (finding the plaintiff was diligent enough where it obtained relevant documents in discovery and moved to amend several months later); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *1–2 (S.D. Ohio Jan. 10, 2017) (granting a motion to amend where the plaintiff obtained documents to support the proposed amendment after the deadline to amend); *Discover Bank v. New Vision Fin., LLC*, No. 2:03-cv-

686, 2005 WL 1865369, at *3 (S.D. Ohio Aug. 1, 2005) (holding a two-month delay between when discovery was obtained and when a motion to amend was filed "fairly inconsequential" for diligence purposes). The Court now turns to the Rule 15 analysis.

      2.     Rule 15

Under this Rule, Plaintiff again clears its burden. Given the procedural history outlined above, Defendant cannot show that Plaintiff's amendment stems from any undue delay, bad faith, or dilatory motive. What's more, Defendant also fails to show how it would be prejudiced by the amendment. Generally, Defendant complains that it has pursued one legal strategy for two years and "cannot now go back in time and adjust that strategy" to conform with Plaintiff's amendment. (Doc. 68 at 10). But Defendant does not point to any additional discovery that must be done because of the breach of contract claim. (*See id.* at 9–10); *Parker v. Breck's Ridge, LLC*, No. 2:17-cv-633, 2019 WL 2223070, at *2 (S.D. Ohio May 23, 2019) (saying that, in determining prejudice, courts consider "whether the assertion of the new claim would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial" (internal quotation omitted)). Plus, the new claim involves the same core facts that predicated this litigation—the parties' negotiations and actions surrounding the PLA, the Nondisclosure Agreement, and the subsequent patents. (Doc. 64 at 10–11 (noting the new claim is logically related to Plaintiff's already pled claims)). Even more, the parties are still in the process of scheduling fact depositions, and discovery does not close until December 6, 2024. (Doc. 58 at 2–3 (noting that the parties had not yet engaged in expert discovery or scheduled depositions due to an upcoming mediation); Doc. 72 (discussing that the parties are still in the process of scheduling depositions)). Put plainly, Defendant has time to pursue additional discovery should it need to.

This leaves Defendant's futility arguments. First, Defendant says that it is not in breach of

7

the PLA, so any breach of contract claim would be futile. (Doc. 68 at 10–12). Second, Defendant argues that Plaintiff is attempting to "add a standalone claim for breach of an implied duty of good faith and fair dealing," which Ohio law does not recognize. (*Id.* at 5–6). For its part, Plaintiff says it is not bringing an independent cause of action based on the implied duty of good faith and fair dealing. Instead, Plaintiff alleges that "Defendant breached the PLA by violating its implied duty of good faith and fair dealing by filing and obtaining patents that prevented Mareiners from exercising its express contractual right to license[] other licensees to use its technology[.]" (Doc. 70 at 15). In support, it points to specific portions of the contract that, it says, granted it a non-exclusive license. (*Id.*at 14 (citing Sections 2.1, 2.4, and 1.3 of the PLA), 8 (again pointing to Section 2.4 of the PLA)).

Importantly, at this stage, the Undersigned's role is to determine "whether the futility of an amendment is so obvious that it should be disallowed." *Bear v. Delaware Cnty.*, No. 2:14-cv-43, 2015 WL 1954451, at *3 (S.D. Ohio Apr. 28, 2015). On their face, Plaintiff's allegations meet this low bar. Any further analysis would require the Undersigned to directly address the merits of Plaintiff's breach of contract claim. So here, "it is the better exercise of discretion to permit the amendment" and allow the sufficiency of Plaintiff's pleadings to be addressed in a dispositive motion before the District Judge. *Id.*; *see also Durthaler v. Accts. Receivable Mgmt., Inc.*, No. No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) (noting that the Court "has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed"); *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 323 (S.D. Ohio 2002) (noting that courts will not "ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous"); *J&R Passmore, LLC v. Rice Drilling D, LLC*, No. 2:18-cv-1587, 2024 WL 111661, at *3 (S.D. Ohio Jan. 10, 2024) ("[T]he

better course is to permit Plaintiffs to file their amended complaint and to allow the parties to address the merits in . . . motions for summary judgment.").

At bottom, the Court finds that Defendant's arguments do not overcome the Federal Rules' liberal policy in favor of amendment. Plaintiff's Motion (Doc. 63) is **GRANTED**.

### IV. CONCLUSION

Defendant's Motion for Leave to File Sur-Reply (Doc. 71) is **DENIED**, and Plaintiff's Motion to Strike Defendant's Motion for Leave to File Sur-Reply is **DENIED as moot**. Plaintiff's Motion for Leave to Amend (Doc. 63) is **GRANTED**. Plaintiff is **ORDERED** to file its Amended Complaint on the docket **within seven (7) days of this Order**.

Date: October 24, 2024            /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE