# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MAREINERS, LLC** ) | Case No. 22-CV-03433-EAS-KAJ |
| ) | |
| Plaintiff, ) | Judge EDMUND A. SARGUS, JR. |
| ) | Magistrate Judge: Kimberly A. Jolson |
| v. ) | |
| ) | **SEALED – CONTAINS HIGHLY** |
| **ANOMATIC CORPORATION** ) | **CONFIDENTIAL INFORMATION** |
| ) | |
| Defendant. ) | **ORAL ARGUMENT REQUESTED** |

### PLAINTIFF MAREINERS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANOMATIC CORPORATION'S MOTION TO EXCLUDE THE OPINIONS OF CORY BAER

## I. INTRODUCTION

This case involves image anodized transaction cards designed by Mareiners and shared with Anomatic under a non-disclosure agreement signed on August 17, 2017. In breach of its agreements with Mareiners, Anomatic used Mareiners' Process to unlawfully secure patents on Mareiners' image anodized transaction cards.

Mr. Baer was introduced to Mr. Goertzen in or around mid-2016 via Mr. Baer's longtime friend R. Roberts, who was an entrepreneur and business owner that was interested in acquiring Mareiners' intellectual property. Ex. 1, C. Baer, Dec. 19, 2024 Dep. 25:9-27:17; Ex. 2, May 20, 2016 C. Baer emails (MAR00011121; MAR00011122). At the time, Mr. Baer was a financial advisor with Morgan Stanley, and based out of Morgan Stanley's Bellevue, Washington location. In May 2016, Mr. Goertzen and his wife met with Mr. Baer, Ms. Mary Black, a First Vice President in Wealth Management with Morgan Stanley, and Ryan Roberts to discuss Mareiners technology and potential sale and licensing of Mareiners' technology, and Mr. Goertzen and Mareiners becoming financial services client of Morgan Stanley. Ex. 3, May 20, 2016 M. Black email

(MAR00011124). Mr. Goertzen and his wife also traveled to Bellevue, WA later in May 2016 to meet with Mr. Baer, Ms. Black and others at Morgan Stanley's offices to discuss his technology and Moran Stanley services. Ex. 4, May 22, 2016 R. Goertzen email (MAR00011127). During these meetings Mr. Goertzen shared samples of his ▓▓▓▓▓▓ image anodized prototype transaction cards.

Mr. Baer and others at Morgan Stanley provided wealth management and financial services to Mr. Goertzen, assisting Mr. Goertzen in seeking investments and capital funding for Mareiners' image sublimated anodized aluminum technology. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 995, ¶ 4.[1] From the inception of Mr. Baer's relationship with Mr. Goertzen and Mareiners in 2016, Mr. Baer's role included providing Mareiners and Mr. Goertzen business advice, and being point person in communicating and connecting Mareiners with potential investors, purchasers or licensees or Mareiners' technology, strategic partners. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 997-998, ¶¶ 13-16.

In June 2016, Mr. Baer introduced Mr. Goertzen to David Michaels of Capstone Partners, wherein Morgan Stanley and Capstone Partners would assist Mareiners in finding purchasers or licensees of Mareiners technology. Ex. 5, July 1, 2016 D. Michaels email (MAR00004047). Over 2016 and 2017, Mr. Baer continued to work with Mareiners, Mr. Goertzen and Capstone to find potential investors, licensees, and purchasers for Mareiners' technology. Mr. Baer participated in several meetings with Mr. Goertzen and Capstone, including Capstone's engineering and technology personnel, wherein details of Mareiners' process and trade secrets were discussed. Ex. 6, Aug. 2016, Capstone emails (MAR00020868-MAR00020869; MAR00020870). Mr. Baer also

---

[1] *See* (Declaration of Cory Baer, ECF No. 96-3 at PageID 994-1004). Mr. Baer confirmed during his deposition that the Declaration of Cory Baer, ECF No. 96-3 at PageID 994-1004 is his content and that he is prepared to testify to each statement under oath. Ex. 1, Baer Depo. at 21:13-24:14.

2

assisted Mr. Goertzen in preparing detailed presentations on Mareiners' transaction card technology. Mr. Baer, through his extensive involvement in technical meetings, presentations, and discussions acquired significant knowledge on the processes, design and construction of Mareiners' ▮▮▮▮▮▮▮ image anodized prototype transaction cards, including the potential market demand for the cards, and interest from banks, such as Chase and Capital One. Ex. 7, June 2017 Email from C. Baer with attachment (MAR00020980-MAR00020981; MAR00004504-MAR00004509).

Mr. Baer met Chris Molke in mid-2017 through Mr. Goertzen. Mr. Molke was CEO and President of Catalyst Card Company ("Catalyst"). Mr. Molke had significant expertise in the credit card transaction space, and specific experience establishing and operating credit card manufacturing facilities that complied with Payment Card Industry Data Security Standards ("PCI Compliant"). *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 998, ¶ 17. Mr. Molke was approached as a potential licensee or manufacturer of metal transaction cards using Mareiners' process. In connection with Mr. Molke's extensive expertise in the credit card manufacturing business, Mr. Molke agreed to perform testing on Mareiners' prototype transaction cards. *See* Ex. 8, July 2017 T. Murphy email (MAR00012071 - MAR00012074).

In August 2017, Mr. Baer became aware that Mareiners and Anomatic were signing a non-disclosure agreement for the purpose of exploring a strategic partnership. After that NDA was executed, Mr. Baer participated in communications between Mareiners and Anomatic regarding Anomatic's interest in purchasing or obtaining the right to use Mareiners' IP to manufacture and sell image anodized transaction cards. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 998, ¶ 18; Ex. 9, Aug. 2017 R. Goertzen email (MAR00012221-MAR00012223). In November 2017, Mr. Baer accompanied Mr. Goertzen at a meeting with Anomatic at Anomatic's headquarters,

172062675v1

wherein Mr. Goertzen disclosed and demonstrated Mareiners' trade secrets, including steps in Mareiners' proprietary imaging process. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 998, ¶ 19; Ex. 10, Scott Rusch Jan. 13, 2025 Dep. Tr. 242:15-243:22. Mr. Baer continued to work with Mareiners throughout Mareiners relationship with Anomatic.

Mr. Baer and Mr. Molke formed USA Cards in August 2020 for the purpose of manufacturing and selling image anodized transaction cards using Mareiners' IP. Between Mr. Molke's extensive experience in the credit card transaction space, and Mr. Baer's experience and connections in the financial services industry, USA Cards was optimally positioned to establish and operate a PCI Compliant facility that would manufacture secure and non-secure transaction cards using Mareiners' IP. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 1000, ¶ 27. Mr. Baer worked diligently to secure investors and funding for USA Cards. In fact, Mr. Baer's company, Strait & Sound Wealth Management was one of the secured investors. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 994, ¶ 2. Because of Mr. Baer's intimate knowledge of Mareiners' technology and transactions cards, as a result of being Mr. Goertzen's point person, participating in meetings with Capstone, investors, and potential licensees, and assisting with preparing presentations for potential investors and licensees, Mr. Baer had personal knowledge of Mareiners' card design and structure, as well as had a general understanding of Mareiners' trade secrets. Upon the discovery and review of Anomatic's '655 patent, Mr. Baer realized that USA Cards could not move forward as sophisticated investors and potential purchasers of image anodized cards, including the investors and prospective investors that USA Cards was in negotiations with, would not entertain doing business with USA Cards because their due diligence efforts would have indicated the '655 Patent would place their investment at risk of an infringement

172062675v1

suit, even if Anomatic never came to market. *See* Declaration of Cory Baer, ECF No. 96-3 at PageID 1003, ¶ 44.

Mr. Baer has personal knowledge regarding the features of the Mareiners' image anodized transaction cards created in 2016 and 2017 prior to Mareiners' relationship with Anomatic. Mr. Baer also has personal knowledge regarding the image anodized transaction cards that USA Cards was funded to manufacture starting in 2022 under a license with Mareiners. Mr. Baer also has general personal knowledge regarding Mareiners' trade secrets related to image ▇▇▇ anodized transaction cards.

Anomatic seeks to complicate this otherwise simple testimony by arguing that Mr. Baer is not an expert in patents or anodizing. While the claims of the '655 patent cover an anodized metallic transaction card, they do not cover a particular variant of anodizing or focus on any aspect of anodizing. Rather, the claims simply call for a "metallic card body . . . . being anodized." Moreover, the Anomatic patent claims do not involve complex or hard to understand technology. Given Mr. Baer's long history as Mr. Goertzen's point person and his personal knowledge, Mr. Baer will testify that he knew that Mareiners' image anodized credit card called for the use of anodized aluminum. This is not complicated or nuanced and does not require specialized knowledge. Rather, Mr. Baer will testify from personal knowledge the features of Mareiners' cards in 2017, as well as the product that USA Cards was going to manufacture featured anodized aluminum.

Because of his personal knowledge and experience with Mr. Goertzen and Mareiners, Mr. Baer is a hybrid expert who will testify about his personal knowledge of Mareiners' image ▇▇▇ anodized transaction cards. Any risk of prejudice will be addressed by a proper jury instruction consistent with *United States v. Young*, 847 F.3d 328, 358 (6th Cir. 2017) (stating that

5

172062675v1

potential prejudice of admitted hybrid fact/expert witness testimony is cured with an adequate cautionary jury instruction).

## II. ARGUMENT

Federal Rule of Evidence 702 governs the admissibility of expert testimony. For expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) their testimony to be relevant; and (3) their testimony to be reliable. *United States v. Anderson*, 67 F. 4th 755, 767 (6th Cir. 2023). In determining whether to admit expert testimony, the Court acts as a gatekeeper. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). The "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

### A. The Court Should Permit Mr. Baer to Testify Regarding his Personal Knowledge because of his extensive involvement with Mareiners, and ultimately his formation of USA Cards prior to this action being filed; thereby rendering him a Hybrid or Non-Retained Expert.[2]

Mr. Baer should be permitted to provide testimony regarding his factual observations regarding the features of the Mareiners' image anodized transaction card that he viewed in 2016 and 2017, the features of the USA Cards image anodized card that USA Cards was going to manufacture in 2022, his review of the '655 patent in 2022 and his conclusion that USA Cards could not manufacture the intended cards in view of the '655 patent. This is all factual testimony and based upon his personal knowledge after his extensive involvement with Mr. Goertzen and Mareiners over several years.

---

[2] *See Antero Res. Corp. v. Tejas Tubular Prods., Inc.*, No. 2:19-CV-804, 2021 WL 2857200, at *4 (S.D. Ohio June 11, 2021) (distinguishing between retained and non-retained experts, stating " 'the distinction between a [retained] expert and a [non-retained] expert is that [non-retained] experts' conclusions and opinions arise from firsthand knowledge of activities they were personally involved in before the commencement of the lawsuit, and not conclusions' " drawn " 'as an expert after-the-fact.' ") ((citing *Call v. City of Riverside*, No. 3:13-CV-133, 2014 WL 2048194, at *4 (S.D. Ohio May 19, 2014)(citing Fielden v. CSX Transp. Inc., 482 F.3d 866, 871 (6th Cir. 2007)).

Moreover, Anomatic's patent claims do not involve complex technology. At no time in this case has Anomatic argued that the claim limitations should be given anything other than their ordinary meaning—because they should not.[3] At no time in this case has Anomatic argued that the claim limitations are extremely complex or too difficult to understand—because they are not.[4] Courts have repeatedly acknowledged that when the technology is simple, or the claims are easily understood, expert testimony is not a de facto requirement. *See* e.g., *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996). For example, in *Virtronics*, the court acknowledged the fundamental patent principle that "where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." *Vitronics*, 90 F.3d at 1584. Further ringing the importance of this axiomatic patent principle, *Virtonics* recognized that "[a]ny other rule would be unfair to competitors who must be able to rely on the patent documents themselves, without consideration of expert opinion that then does not even exist, in ascertaining the scope of a patentee's right to exclude." *Id*. at 1578.

Importantly, Mr. Baer is not being offered to express opinions regarding legal conclusions. Mr. Baer will not testify as to the legal standard for patent infringement. Rather, based on Mr. Baer's extensive personal knowledge from assisting Mr. Goertzen and Mareiners' over the years

---

[3] *See e.g. Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc*).

[4] *See e.g. Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1292 (Fed. Cir. 2023) (stating "we agree with the district court that "expert testimony was not necessary; the technology at issue was easily understandable.... [T]he jury could therefore have reached its decision on infringement by ignoring all of the expert testimony and focusing solely on the patent and the accused device."); *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1348 (Fed. Cir. 2017) ("[S]ome cases involve technologies and prior art that are simple enough that no expert testimony is needed . . .."); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed.Cir.2010) ("expert testimony is not required when the references and the invention are easily understandable"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1578, 1584 (Fed. Cir. 1996) (acknowledging that when the technology is simple, or the claims are easily understood, expert testimony is not required, recognizing that it would be unfair, as competitors must be able to rely on the patent documents themselves without the need of an expert in order ascertain the scope of the patentee's right to exclude); *Vita-Mix Corp. v. Blendtec, Inc.*, No. 1:15 CV 1118, 2017 WL 3425286, at *6 (N.D. Ohio Aug. 9, 2017) (finding that "the technology at issue, *i.e.*, a blender jar, is relatively simple and will be easily understandable without the need for expert explanatory testimony").

7

in presenting the technology to potential investors and licensees, the numerous meetings wherein the technology was discussed, and forming USA Cards to manufacture cards using Mareiners' technology, Mr. Baer will present testimony on (1) what Anomatic's patents disclosed to him, (2) the features claimed in Anomatic's patents and how they compare to the features of Mareiners' prototype image anodized transaction cards and the image anodized transaction cards that USA Cards intended on manufacturing, and (3) how Anomatic's patents prevented USA Cards from coming to market with transaction cards that use Mareiners' image anodized technology. To be clear—Mr. Baer will not provide legal opinions.

### B. Mr. Baer's testimony is relevant and admissible

Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Anomatic seeks to exclude Mr. Baer from testifying or providing evidence related to the scope of the Anomatic patents, how the Anomatic Patents relate to the scope of the products and processes USA Cards was going to bring to market, and whether the Anomatic patents disclose Mareiners' trade secrets. (Mtn. Excl. Opinion Cory Baer, ECF No. 96-1 at PageID 980). Mareiners' Complaint alleges that "Anomatic's patents prevented USA Cards from coming to market because they cover image anodized transaction cards made using Mareiners' trade secrets, including Mareiners' proprietary manufacturing processes," and "[b]y patenting image anodized aluminum transaction cards made using Mareiners' trade secrets, including prototypes the Mareiners independently developed, Anomatic prevented Mareiners from licensing other licensees to use Mareiners' trade secrets to manufacture and sell image anodized aluminum transaction cards, from which Mareiners would have collected licensing revenue but for the '655 Patent and the '518 Patent." (1st Am. Compl, ECF No. 77 at PageID 894, ¶ 96, PageID 898, ¶126) Any evidence or testimony Mr. Baer may provide

8

on the scope of the Anomatic patents, how the Anomatic Patents relate to the scope of the products and processes USA Cards was going to bring to market, or whether the Anomatic patents disclose Mareiners' trade secrets will help the jury determine Anomatic's breaches and misappropriations, as well as Mareiners' damages. Thus, this evidence is relevant.

### C. Mr. Baer's testimony is reliable.

The last factor relates to the expert witness' reliability. *Anderson*, 67 F. 4th at 767. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation." *In re Scrap Metal Antitrust Litig.*, 527 F. 3d at 529-30. Because Anomatic has issued patents, the analysis that has to be performed equates to an infringement analysis. "There are two steps involved in determining patent infringement: (1) the court must determine the scope of the claim; and (2) the properly construed claim must be compared to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Ridge Corp. v. Kirk Nat'l Lease Co.*, No. 2:23-CV-03012, 2024 WL 4363226, at *2 (S.D. Ohio Sept. 30, 2024).

In determining that Anomatic's patents claim the features in Mareiners' prototype image ▮▮▮▮▮▮ anodized aluminum transaction cards, Mr. Baer reviewed the patents and claims, discussed the patents with Mr. Molke, determined the meaning of the claim terms and then compared Mareiners' prototype image ▮▮▮▮▮▮ anodized aluminum transaction cards, as well as the ▮▮▮▮▮▮ anodized aluminum transaction cards USA Cards intended to manufacture to the Anomatic claims (*i.e.,* performed a claim-by-claim analysis). This is the recognized framework for determining patent infringement. Because Mr. Baer conducted his analysis in accordance with this recognized framework, his opinions are sufficiently reliable.

172062675v1

### III. CONCLUSION

Mr. Baer's intimate knowledge of Mareiners image anodized transaction cards in 2016, and his similar knowledge of USA Cards image anodized transaction cards set to be manufactured in 2022 qualifies him to testify as a hybrid fact/expert witness. In accordance with *United States v. Young*, 847 F.3d 328, 358 (6th Cir. 2017), Mareiners agrees that an instruction should be provided to the jury regarding their ability to assess the credibility of this witness testimony. Any prejudice will be resolved through such an instruction. *Id*.

Dated: March 28, 2025         */s/ Aaron P. Bradford*
                                                Aaron P. Bradford (admitted *pro hac vice*)
                                                abradford@taftlaw.com
                                                Stephen J. Segall (admitted *pro hac vice*)
                                                ssegall@taftlaw.com
                                                Tara M. Williams (admitted *pro hac vice*)
                                                twilliams@taftlaw.com
                                                Taft, Stettinius & Hollister LLP
                                                675 Fifteenth Street, Suite 2300
                                                Denver, CO 80202
                                                Telephone: (303) 297-2900
                                                Fax: (303) 298-0940

                                                James D. Abrams (0075968), Trial Counsel
                                                jabrams@taftlaw.com
                                                Taft Stettinius & Hollister LLP
                                                41 South High Street, Suite 1800
                                                Columbus, OH 43215
                                                Telephone: (614) 221-2838
                                                Fax: (614) 221-2007

                                                *Counsel for Plaintiff, Mareiners, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served electronically via the Court's CM/ECF system on March 28, 2025, upon counsel for all parties.

*/s/ Aaron P. Bradford*
Aaron P. Bradford

*Counsel for Plaintiff Mareiners, LLC*

172062675v1